IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL JACOBSON, | ) | |
| | ) | |
| Plaintiff, | ) | 4:06cv3166 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| JON BRUNING, | ) | |
| | ) | |
| Defendant. | ) | |

      This matter is before the court on filing no. 9, the Motion to Dismiss filed by the defendant Jon Bruning; filing no. 11, the Motion for Default Judgment filed by the plaintiff, Michael Jacobson; and filing no 14, the plaintiff's Motion for Extension of Time to File Brief in Support of Resistance and Objection to Defendant's Motion to Dismiss. As a preliminary matter, filing no. 14, the plaintiff's Motion for Extension of Time, is granted retroactively, and the plaintiff's Brief (filing no. 15) in response to the defendant's Motion to Dismiss is deemed timely.

      Pursuant to 42 U.S.C. § 1983, the plaintiff has sued Nebraska Attorney General Jon Bruing, in his official capacity, as the state officer "charged by statute to defend Nebraska statutes against a claim of being unconstitutional and enforce their sanctions" (filing no. 8, Amended Complaint, at ¶ 6). The plaintiff, a farmer and rancher in Sheridan County, Nebraska, challenges certain Nebraska statutes as unconstitutional. Specifically, the plaintiff vehemently opposes provisions of Neb. Rev. Stat. §§ 46-701 through 46-754, the Nebraska Ground Water Management and Protection Act, and LB 1226, passed by the Nebraska Unicameral on April 12, 2006, which amends and adds to the Ground Water Act.

      The challenged legislation limits the plaintiff's use of ground water underneath his land. As a consequence, the plaintiff has been denied his "Constitutional right to use irrigation equipment and production equipment already bought and paid for" (filing no. 8 at ¶ 50); he has been "put to a competitive disadvantage by having to buy captive agricultural products ... there by being forced into involuntary servitude (id. at ¶ 51); he has been "denied the Constitutional right to defend one self against the raves of the

unpredictable weather" (id. at ¶ 52). The value of his land has diminished (id. at ¶¶ 53-55).

The plaintiff asserts that he has a private property right in under ground water (filing no. 8 at ¶ 19) which is superior to the interest or claim of anyone else (id. at ¶¶ 20 *et seq.*) including the State of Nebraska. Around March of 2003, the plaintiff filed suit in a state district court in response to directives by the Board of Directors of the Upper Niobrara-White Natural Resources District and the Nebraska Department of Natural Resources that landowners must suspend the drilling of new irrigation wells. On motion by the Nebraska Attorney General and the Board of the District, the court dismissed the plaintiff's action (id. at ¶ 38).

### Sovereign Immunity

The defendant does not address the merits of the plaintiff's claims but asserts that the plaintiff may not bring this action in federal court. I agree with the defendant that the sovereign immunity of the State of Nebraska, recognized and preserved by the Eleventh Amendment to the U.S. Constitution, precludes the plaintiff from bringing this action in federal district court.

A lawsuit against a government employee in his or her official capacity is actually a suit against the public employer. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Therefore, although the plaintiff has sued the Nebraska Attorney General, the defendant in his official capacity is considered the State itself for purposes of this litigation. The plaintiff also seeks relief directly against the State, in this case a declaratory judgment that the "plaintiff has the right to drill irrigation wells on [his] land without interference and sanctions from the State of Nebraska, in production of agriculture products for interstate commerce." (Filing no. 8 at ¶ 10.)

Insofar as this is an action under 42 U.S.C. § 1983 against the State of Nebraska or an agency or instrumentality of the State, "a State is not a 'person' as that term is used in [42 U.S.C.] § 1983, and is not suable under the statute, regardless of the forum where the suit is maintained." Hilton v. South Carolina Public Railways Com'n, 502 U.S. 197, 199-201 (1991), *citing* Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Thus, 42 U.S.C. § 1983 does not create a cause of action against the State of Nebraska or its agencies and instrumentalities.

## **Ex parte Young**

The plaintiff acknowledges that sovereign immunity shields the State of Nebraska, its agencies and instrumentalities and employees in their official capacity in many circumstances.  However, the plaintiff relies on the doctrine of Ex Parte Young, 209 U.S. 123, 155-56 (1908), by which a private party may seek prospective injunctive relief in federal court against state officials in their official capacity, even if the state is otherwise protected by the Eleventh Amendment.  See, e.g, Klingler v. Director, Dept. of Revenue, 281 F.3d 776, 777 (8th Cir. 2002).

The doctrine of Ex parte Young, which ensures that state officials do not use the Eleventh Amendment to avoid compliance with federal law, carves out an exception to Eleventh Amendment immunity. However, the exception is narrow and applies in circumstances involving both prospective relief and a federal interest.

The exception does not permit a judgment against a state officer in his or her official capacity declaring that the officer violated federal law in the past.  See, e.g., Green v. Mansour, 474 U.S. 64, 68, 73 (1985).[1]   Similarly, while a suit to enjoin state officials  in their official capacity may proceed if the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective, a declaratory judgment establishing *past* liability of the State is nevertheless forbidden by the Eleventh Amendment.  Verizon Maryland, Inc. v. Public Service Com'n of Maryland, 535 U.S. 635, 646 (2002).

In this case, the rights advanced by the plaintiff arise under Nebraska law, and his claims derive from, and turn on, interpretation of state law.  Federal law did not confer plaintiff's rights.  The "vested private property rights in water" referenced in the Amended Complaint, which are alleged to be imperiled by the legislation challenged by the plaintiff, are property rights conferred solely by state law. Similarly, the legislation which purportedly infringes the plaintiff's property rights in under ground water is a matter of state law.

---

[1]A declaratory judgment by a federal court that state officers in their official capacity violated federal law in the past "would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment."  Green v. Mansour, 474 U.S. 64, 72-73, (1985).

The plaintiff traces his property rights to inheritance of the surface land from his parents. Of course, the plaintiff's rights derived from inheritance under state law cannot exceed the rights held by his parents. In Sporhase v. Nebraska, ex rel. Douglas, 458 U.S. 941 (1982), the U.S. Supreme Court described a Nebraska landowner's rights to under ground water as quite limited.

> In Nebraska the surface owner has no comparable interest in ground water. As explained by the Nebraska Supreme Court, "'the owner of land is entitled to appropriate subterranean waters found under his land, but he cannot extract and appropriate them in excess of a reasonable and beneficial use upon the land which he owns, especially if such use is injurious to others who have substantial rights to the waters, and if the natural underground supply is insufficient for all owners, each is entitled to a reasonable proportion of the whole.'" ... 305 N.W.2d, at 617 (quoting Olson v. City of Wahoo, ... 248 N.W. 304, 308 (1933)).

Id. at 950. The dissent, differing only as to whether the Commerce Clause was implicated in Sporhase, agreed with the majority that Nebraska landowners enjoy minimal ownership rights to ground water, elaborating that:

> As with almost all of the Western States, Nebraska does not recognize an absolute ownership interest in ground water, but grants landowners only a right to use ground water on the land from which it has been extracted. Moreover, the landowner's right to use ground water is limited. Nebraska landowners may not extract ground water "in excess of a reasonable and beneficial use upon the land in which he owns, especially if such use is injurious to others who have substantial rights to the waters, and if the natural underground supply is insufficient for all owners, each is entitled to a reasonable proportion of the whole." Olson v. City of Wahoo, ... 248 N.W. 304, 308 (1933). With the exception of municipal water systems, Nebraska forbids any transportation of ground water off the land owned or controlled by the person who has appropriated the water from its subterranean source. ... 305 N.W.2d 614, 619 (1981).
>
> Nebraska places additional restrictions on ground water users within certain areas, such as the portion of appellant's land situated in Nebraska, where the shortage of ground water is determined to be critical. Water users in appellants' district are permitted only to irrigate the acreage irrigated in 1977, or the average number of acres irrigated between 1972 and 1976, whichever is greater, and must obtain permission from the water district's board before any additional acreage may be placed under irrigation. The amount of ground water that may be extracted is strictly limited on an acre-inch-per-

> irrigated-acre basis. There are also detailed regulations as to the spacing of wells and the use and operation of flow meters.

Id. at 964-65 (Rehnquist, J, dissenting, with whom Justice O'Connor joined).

There is no federal interest inherent in an alleged violation of state law by the state. "[A] violation of state law, without more, does not create a claim under the federal Constitution or 42 U.S.C. § 1983." Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993). Accord Collins v. Bellinghausen, 153 F.3d 591, 596 (8th Cir. 1996); Marler v. Missouri State Bd. of Optometry, 102 F.3d 1453, 1457 (8th Cir. 1996).

More important, the Eleventh Amendment deprives federal courts of jurisdiction over claims to enjoin a state official from prospective violation of state law or to require a state official to conform to state law. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 104-06 (1984). In such a case, the "need to promote the supremacy of federal law" underlying the Ex Parte Young exception is absent. Id. at 106.

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

Id.

The plaintiff contends that more than just local property interests are at stake here, and he invokes the federal Commerce Clause in his facial challenge to the State's legislative restrictions on his use of ground water. It is true that the Commerce Clause precludes a state from discriminating in favor of its own inhabitants against nonresidents, even as to natural resources within the state's borders. Thus, in Sporhase v. Nebraska ex rel. Douglas, 458 U.S. 941 (1982), Nebraska created an impermissible barrier to interstate commerce by preventing the export of ground water to states which did not allow reciprocal export rights. Id. at 958.

However, the legislation which the plaintiff seeks to enjoin does not discriminate in favor of Nebraska residents against inhabitants of other states. On the contrary, the plaintiff objects to the restriction of his own local property rights by the State of Nebraska,

5

a purely intrastate concern, and a matter of competing property rights within the state's borders – pitting interests arising under state common law, estate law, statutory and regulatory law against each other, for a court to sort out wherever the State of Nebraska has consented to be sued for that purpose.

This case is reminiscent of Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997), in which the Coeur d'Alene tribe and its members filed a declaratory judgment action in federal court against the State of Idaho and its officials to establish the tribe's entitlement to certain submerged lands under Lake Coeur d'Alene in Idaho. The defendants asserted the state's right under the Eleventh Amendment to have the dispute resolved in its own courts. The tribe alleged a continuing violation of its property rights in contravention of federal law, sought prospective injunctive relief, and invoked the Ex parte Young exception to the state's sovereign immunity.

The Court concluded that when a suit and the remedy it seeks "implicate[] special sovereignty interests" (in that case in the state's subterranean lands and waters), risk an outcome equivalent to an invasion of the state treasury, and may be pursued in a state forum, the state's sovereign immunity should not be ignored in favor of applying the Ex Parte Young fiction in a federal court. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. at 281, 287-88: "[I]f the Tribe were to prevail, Idaho's sovereign interest in its lands and waters would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury. Under these particular and special circumstances, we find the Young exception inapplicable. The dignity and status of its statehood allow Idaho to rely on its Eleventh Amendment immunity and to insist upon responding to these claims in its own courts, which are open to hear and determine the case." Id. at 287-88.

The plaintiff seeks in the present case to divest the State of Nebraska of some or all of the State's regulatory authority with respect to ground water within the State's boundaries. The case implicates significant sovereignty interests and risks fiscal consequences for the State. Also, as earlier discussed, this is not a case in which it is necessary for the federal courts to vindicate federal rights.

A state-court forum exists for suit against the State of Nebraska or its officers in an

action in state court like the one the plaintiff has instituted in this court. See the Nebraska Uniform Declaratory Judgments Act, Neb. Rev. Stat. §§ 25-21,149 to 25-21,164. Neb. Rev. Stat. § 25-21,150 of the Act states:

> **Any person ... whose rights**, status or other legal relations **are affected by a statute**, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the ... **statute**, ordinance, contract, or franchise **and obtain a declaration of rights, status or other legal relations thereunder**.

(Emphasis added.) "The Legislature has specifically decreed that the 'state may be sued in the district court of the county wherein the capital is situated in any matter founded upon or growing out of a contract, express or implied, originally authorized or subsequently ratified by the Legislature, **or founded upon any law of the state**.' Neb. Rev. Stat. § 25-21,206 .... Accordingly, the system has waived its sovereign immunity under the provisions of § 25-21,206." Hoiengs v. County of Adams, 516 N.W.2d 223, 235 (Neb.,1994).[2] (Emphasis added.)

A state declaratory judgment action attacking the constitutionality of a state statute or seeking relief from an invalid act or an abuse of authority by an officer or agent of the state does not violate the state's sovereign immunity if certain rules are observed. First, an action for declaratory judgment does not lie where another equally serviceable remedy is available. Northwall v. State, Dept. of Revenue, 637 N.W.2d 890, 896 (Neb. 2002). Therefore, if another state statutory scheme provides a more specific remedy, that remedial source may not be ignored in favor of the more general remedy of a declaratory judgment. Id.

Just as the Declaratory Judgments Act permits an action to challenge the constitutionality of a statute, Neb. Rev. Stat. § 84-911 provides a cause of action for a declaratory judgment concerning the constitutionality of administrative rules and regulations. See Logan v. Department of Corr. Servs., 578 N.W.2d 44, 51 (Neb. 1998).

---

[2]The current version of Neb. Rev. Stat. § 25-21,206 states in pertinent part: "The state may be sued in the district court of Lancaster County in any matter founded upon or growing out of a contract, express or implied, originally authorized or subsequently ratified by the Legislature, **or founded upon any law of the state**." (Emphasis added.)

7

In both instances, however, the state's waiver of sovereign immunity is restricted to restraining a state official from performing an invalid act (as opposed to compelling a state official to perform an affirmative act). Johnson v. Clarke, 603 N.W.2d 373, 376-77 (Neb. 1999).[3] Accordingly, it appears that the plaintiff has an available forum in the state courts, either because a remedy exists under the statutory scheme which he challenges, or, if not, then under the state Declaratory Judgments Act to enjoin appropriate public officials from enforcing the state legislation which he contends violates his property rights in ground water.

For the foregoing reasons, the defendant's Motion to Dismiss will be granted. In addition, the plaintiff's Motion for Default Judgment is denied. The defendant received an extension of time to respond to the initial complaint. Before the defendant's deadline expired, the plaintiff filed his Amended Complaint. The plaintiff responded on a timely basis to the Amended Complaint. See filing no. 9 and Fed. R. Civ. P. 12(b).

---

[3]A declaratory judgment action which seeks a "statement of rights" but does not request state officials "to *do anything*" does not infringe on the state's immunity. Jacob v. Hill, 2003 WL 21316229 at *6 (Neb. App. 2003) (emphasis in original). Similarly, a plaintiff may sue a state official and seek to restrain that defendant from enforcing allegedly illegal laws or performing "invalid" acts, as long as the plaintiff does not seek to compel affirmative injunctive relief from the state official. If a declaratory judgment would compel an affirmative act by a state official, the state's sovereign immunity bars the action. See, e.g., Logan v. Department of Corr. Servs., 578 N.W.2d 44, 51 (Neb. 1998):

> In determining whether the defendants' demurrer should have been sustained, we look at whether [the plaintiff] seeks to compel affirmative action on the part of state officials which is within the rule of immunity **or, instead, seeks to restrain state officials from performing affirmative acts which are not within the rule of immunity ....**
>
> The petition ultimately requests that the officers of the Department be prevented from requiring that the sentences from Knox County and Madison County be served consecutively to each other. Thus, [the plaintiff's] action **seeks to restrain state officials from performing affirmative acts which he alleges would be invalid and an abuse of authority**. Therefore, the action as against [the state officials] Clarke and Hopkins is not barred by sovereign immunity.

(Emphasis added.)

THEREFORE, IT IS ORDERED:

1. That filing no. 9, the Motion to Dismiss filed by the defendant Jon Bruning, is granted;

2. That filing no. 11, the plaintiff's Motion for Default Judgment, is denied;

3. That filing no 14, the plaintiff's Motion for Extension of Time to File Brief in Support of Resistance and Objection to Defendant's Motion to Dismiss, is granted; and

4. That judgment will be entered dismissing the plaintiff's complaint and this action without prejudice.

April 24, 2007.                    BY THE COURT:


s/ *Richard G. Kopf*
United States District Judge